IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MISBAH ELDEREINY, and TAREK SALEH, <br><br> Plaintiffs, <br><br> vs. <br><br> TD AMERITRADE, INC., et al., <br><br> Defendants. | 8:21-CV-451 <br><br> MEMORANDUM AND ORDER |

The plaintiff Misbah Eldereiny had an electronic trading account with defendant TD Ameritrade. Filing 1 at 1. Eldereiny alleges that he purchased 6,000 shares of Amazon common stock (AMZN) on January 18, 2011, which TD Ameritrade illegally seized from his account "through coordination with [defendants] Wolters Kluwer Financial Services, Inc. and Gainskeeper." Filing 1 at 1. In response, Eldereiny sued all three entities alleging various violations of state and federal law. *See* filing 1. Tarek Saleh, a "close friend" of Eldereiny who allegedly had "full authority on the [TD Ameritrade] Account," is also a plaintiff in the action. *See* filing 1 at 2; filing 16 at 5. Both TD Ameritrade and Wolters Kluwer have moved to dismiss the complaint (filing 8; filing 12), arguing there are multiple jurisdictional defects. *See* filing 9 at 4-6; filing 13 at 2. For the reasons outlined below, the Court will grant the defendants' motions to dismiss.

BACKGROUND

Misbah Eldereiny is a 79-year-old man residing in San Diego, California. Filing 1 at 4. According to the plaintiffs, Eldereiny opened an electronic trading

account with TD Ameritrade in 1998, and in 2009, he began buying and selling AMZN shares. Filing 1 at 5. On January 14, 2011, Eldereiny allegedly bought 60 put options, filing 1 at 3, each of which entitled him to sell 100 shares of AMZN (for a total of 6,000 shares) at a pre-determined price. *See* filing 9 at 3. The options expired that same day if not exercised. Filing 1 at 3.

The rest of the plaintiffs' allegations surrounding Eldereiny's put options are unclear and, at times, contradictory. At the outset of the complaint, the plaintiffs allege that Eldereiny "neglected to sell the 60 Put on 1/14/11 *but TD exercised according to regulation on 1/14/2011* and registered it on 1/18/2011." Filing 1 at 3 (emphasis added). Later, however, the plaintiffs assert that TD Ameritrade fraudulently recorded that Eldereiny sold 6,000 AMZN shares on 1/14/11, "which never happened." Filing 1 at 9. Instead, they claim Eldereiny bought 6,000 AMZN shares on January 18, 2011, after the put options had expired, and that he never sold those shares. Filing 1 at 9. But, on April 11, 2017—after Eldereiny allegedly already received a Form 1099 for 2016 which reflected his ownership of the 6,000 AMZN shares—the plaintiffs claim TD Ameritrade sent Eldereiny a "corrected" Form 1099, prepared by Gainskeeper, which removed the 6,000 AMZN shares as if he never owned them. Filing 1 at 6-7.

After TD Ameritrade allegedly confiscated his AMZN shares fraudulently, Eldereiny submitted documentation providing his friend and co-plaintiff Saleh with full authorization on his account, "giving him a chance to work with TD to convince it to return the 6000 AMZN shares to Eldereiny's account." Filing 1 at 7. When Saleh failed to successfully negotiate the return of Eldereiny's 6,000 AMZN shares, Eldereiny filed a claim with the Financial Industry Regulatory Authority. Filing 1 at 8. Saleh allegedly represented

2

Eldereiny during the arbitration. *See* filing 16 at 4. That claim was dismissed by the arbitration panel on July 26, 2021, and following this decision the plaintiffs filed the current action. Filing 1 at 8.

The plaintiffs now assert numerous state law contract and tort claims in addition to alleging the defendants' actions violated federal law, specifically the Older Americans Act of 2006, 42 U.S.C. § 3001 *et seq.*, the Federal Elder Justice Act, 42 U.S.C. § 1397j, and Section 303 of the Senior Safe Act, 12 U.S.C. § 3423(a)(2). *See* filing 1. The defendants have moved to dismiss the complaint on multiple grounds, including that the Court lacks subject matter jurisdiction. *See* filing 9 at 4-6; filing 13 at 2.

## STANDARD OF REVIEW

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges whether the court has subject matter jurisdiction. The party asserting subject matter jurisdiction bears the burden of proof. *Great Rivers Habitat All. v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010).

A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack'" and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id.* Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered. *Id.* at 914.

This case presents a factual attack. *See* filing 10; filing 14. Thus, the plaintiffs do not enjoy the benefit of the allegations in their pleadings being accepted as true by the reviewing court. *Id.*

DISCUSSION

Before disputing the sufficiency of the legal claims in the plaintiffs' pleadings, the defendants argue the Court does not have subject matter jurisdiction over this case. Specifically, they argue the Court lacks subject matter jurisdiction because (1) there is not complete diversity of citizenship between the parties; (2) there is no federal question raised on the face of the complaint; and (3) in the alternative, at the very least, Saleh lacks Article III standing to pursue any claims against the defendants. *See* filing 9 at 4-6; filing 13 at 2.

Both subject matter jurisdiction and standing are threshold issues. *See Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999); *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1126 (8th Cir. 1998). And "[i]t is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits." *Ruhrgas*, 526 U.S. at 585. Thus, the Court will first address whether it has subject matter jurisdiction either through federal question or diversity jurisdiction.

The plaintiffs appear to assert the Court has diversity jurisdiction. Filing 1 at 2. Under 28 U.S.C. § 1332(a), diversity jurisdiction "requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants." *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 932 F.3d 1102, 1104 (8th Cir. 2019) (citations omitted). To establish complete diversity, it must be established that "no defendant holds citizenship in the same state

4

where any plaintiff holds citizenship." *Id*. (citations omitted). And a corporation "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." *Id*. (quoting 28 U.S.C. § 1332(c)(1)).

According to the plaintiffs' complaint, Eldereiny is a resident of California, and Saleh is a resident of New York. Filing 1 at 2. The complaint also alleges that defendant TD Ameritrade is headquartered in Nebraska. Filing 1 at 2. TD Ameritrade does not dispute that its principal place of business is, in fact, located in Nebraska. *See* filing 10 at 1. However, in challenging diversity jurisdiction, TD Ameritrade provided an affidavit—authored by the corporation's Director of Legal Counsel—establishing that TD Ameritrade "is a corporation organized pursuant to the laws of the State of New York." Filing 10 at 1. And the plaintiffs have failed to establish that TD Ameritrade is *not* a citizen of New York for diversity purposes, *see* filing 16 at 4-6. Since the information in front of the Court establishes that Saleh and TD Ameritrade are both citizens of New York, complete diversity of citizenship does not exist, making diversity jurisdiction improper.[1]

"Absent diversity of citizenship, federal-question jurisdiction is required." *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017). Federal question jurisdiction only exists "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id*. However, "[i]f the

---

[1] The Court will also note that the plaintiffs' pleadings fail to meet their burden of establishing diversity jurisdiction because they allege they are "residents" of New York and California. *See Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (concluding that plaintiff's complaint alleging his *residency* and not his *state citizenship* was insufficient to establish diversity jurisdiction).

5

asserted basis of the federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005). Here, the defendants argue that federal question jurisdiction does not exist because the federal statutes under which the plaintiffs' claims purportedly arise do not create a private right of action. *See* filing 9 at 9-10; filing 13 at 18. The Court agrees.

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

*Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (citations and quotations omitted); *see Osher v. City of St. Louis, Missouri*, 903 F.3d 698, 702 (8th Cir. 2018). It is insufficient to show merely that a particular statute intended to benefit the putative plaintiff. *Osher*, 903 F.3d at 702.

As outlined above, the plaintiffs allege that the conduct of the defendants violated the Older Americans Act of 2006, the Federal Elder Justice Act, and Section 303 of the Senior Safe Act. *See* filing 1 at 13. But the plaintiffs direct the Court to nothing in those enactments, nor can the Court find anything in

6

those enactments, suggesting an intent to create a private right of action for anyone in the plaintiffs' position.[2] *See, e.g.*, *Roa v. City of Denison*, No. 4:16-CV-115, 2017 WL 9287012, at *17 (E.D. Tex. Aug. 29, 2017), *report and recommendation adopted,* No. 4:16-CV-115, 2017 WL 4675062 (E.D. Tex. Oct. 18, 2017) (holding that the Older Americans Act, which provides assistance to states for a system to provide services to the elderly, does not provide senior citizens with a private right of action); *Ferlingere v. MA Imee Burkholder*, No. 3:16-CV-207, 2016 WL 5929222, at *3 (D. Nev. Aug. 4, 2016), *report and recommendation adopted,* No. 316-CV-207, 2016 WL 5929334 (D. Nev. Oct. 11, 2016) (finding no private right of action under the Elder Justice Act, which was enacted as part of the Affordable Care Act to provide federal resources to prevent and respond to elder abuse); *Wilkerson v. Chase Bank*, No. 21-cv-1038, 2021 WL 3356372, at *2 (S.D. Tex. July 1, 2021), *appeal dismissed sub nom. Wilkerson v. Dimon*, No. 21-20391, 2022 WL 306469 (5th Cir. Jan. 5, 2022) (finding no private right of action under the Senior Safe Act, which provides immunity to banks reporting suspected financial exploitation of the elderly).

Since the plaintiffs have failed to meet their burden to establish the Court has either diversity or federal question jurisdiction, the Court will grant the defendants' motions to dismiss.[3]

---

[2] Nor are these statutes particularly implicated by the facts the plaintiffs have alleged—each act is generally meant to benefit senior citizens, but that is as far as the similarity goes. The Court cannot say, however, that the plaintiffs' don't "state a claim" when there's no claim under any of these acts to be stated.

[3] As stated above, the Court has discretion to decide in which order to determine threshold issues. Having concluded there is no federal question or diversity jurisdiction, the Court need not determine whether Saleh has Article III standing.

7

IT IS ORDERED:

1. TD Ameritrade, Inc.'s motion to dismiss (filing 8) is granted.

2. Wolters Kluwer Financial Services, Inc.'s motion to dismiss (filing 12) is granted.

3. The plaintiffs' complaint is dismissed.

4. A separate judgment will be entered.

Dated this 16th day of March, 2022.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge